IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANNE MARIE LYON, individually, and on behalf of others similarly situated,

    Plaintiff,

  v.

W. W. GRAINGER INC., and Does 1 through 50, inclusive,

    Defendants.

No. C 10-00884 WHA

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION**

**INTRODUCTION**

    In this putative employment law class action, plaintiff Anne Lyon moves to remand this case to state court for improper removal and requests an award of associated fees and costs.

**STATEMENT**

    Plaintiff originally filed this case in the Superior Court of San Mateo, but defendant removed this action based on diversity. Although this is a putative class-action lawsuit, defendant did not attempt to assert federal jurisdiction based on CAFA. CAFA allows federal courts to exercise jurisdiction over class action lawsuits where the aggregate claims of the class exceed $5,000,000. But even if a class action lawsuit seeks less, federal courts may still exercise jurisdiction where diversity is established.

    Plaintiff in her motion argues that her claims do not meet the amount in controversy necessary for diversity jurisdiction and therefore were improperly removed. Plaintiff's complaint

seeks the following: (1) unpaid overtime wages; (2) penalties under California Labor Code Sections 203, 210, 226.3, 558, and 1174.5; (3) attorney's fees; (4) payment of taxes owed; and (5) an injunction preventing defendant from continued violations of the Labor Code.

## ANALYSIS

### 1. BURDEN OF PROOF ON DEFENDANT TO ESTABLISH THE AMOUNT IN CONTROVERSY.

The Ninth Circuit has identified three possible burdens of proof for establishing that removal was proper. *First*, "when a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is *presumptively satisfied* unless it appears to a legal certainty that the plaintiff cannot actually recover that amount." *Second*, where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, a *preponderance-of-the-evidence* standard is applied. *Third*, in the CAFA context where "a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the party seeking removal must prove with *legal certainty* that CAFA's jurisdictional amount is met." *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699 (9th Cir. 2007).

Plaintiff asserts here that the burden of proof is on defendant to prove with legal certainty that the jurisdictional amount is met. Plaintiff assumes that because she affirmatively alleges less than the jurisdictional threshold for diversity, that this burden of proof would apply. This burden of proof, however, has only been applied within the CAFA context. *See Guglielmino,* 506 F.3d at 699. Federal jurisdiction was established in this matter through diversity, *not* through CAFA. It would be an unprecedented extension of Ninth Circuit caselaw to apply the burden of proof that plaintiff suggests to a non-CAFA case such as this.

Even if the CAFA rule could be extended to diversity cases, plaintiff does not successfully allege that the total amount in controversy is less than $75,000. It is true that plaintiff affirmatively alleges that "[t]he amount in controversy, inclusive of damages, restitution, penalties and pro rata share of statutory attorney fees for the named plaintiff, does not exceed $75,000" (Compl. ¶ 3). Plaintiff, however, does not include the financial burden of taxes and

injunctive relief against defendant in her assertion that the amount in controversy does not exceed $75,000 (Compl. ¶ 3). Because of this, the amount in controversy is still unclear and ambiguous from the face of the complaint.

In *Guglielmino*, the Ninth Circuit held that the amount in controversy was unclear even though the plaintiff's complaint stated that "'the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $75,000,'" because this statement did not include the "back payment of health benefits and taxes as well as an accounting of moneys due to the Distributors and other similarly situated class members." *Guglielmino*, 506 F.3d at 700–01. The Ninth Circuit therefore applied a preponderance-of-the-evidence standard. Plaintiff here made the same mistake as the plaintiff in *Guglielmino*. Therefore, a preponderance-of-the-evidence standard applies here as well.

### 2. CLAIMS INCLUDED IN THE AMOUNT IN CONTROVERSY CALCULATION.

Plaintiff disputes defendant's inclusion of some of her claims in calculating the amount in controversy. In determining the amount in controversy, "28 U.S.C.S. § 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs.'" *Guglielmino,* 506 F.3d at 700.

Plaintiff argues that because the payment of taxes owed and the value of the injunction against defendant are not recoverable, these costs should not be included because the "either viewpoint" rule does not apply. Plaintiff is incorrect. In determining the amount in controversy for a class action lawsuit, the Ninth Circuit stated:

> whether each plaintiff is asserting an individual right or, rather, together the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest." If it is the latter, we may then look to the "either viewpoint" rule to determine jurisdiction. If it is the former, *the test is the cost to the defendants of an injunction running in favor of one plaintiff.*"

*In re Ford Motor Company/Citibank (South Dakota) N.A.*, 264 F.3d 952, 959 (9th Cir. Wash. 2001) (emphasis added). The cost to defendant is, therefore, considered whether or not the "either viewpoint" rule is used. The cost of taxes and the injunction against defendant must be included when determining the amount in controversy.

3

1    Defendant's estimate of the cost of plaintiff's injunction was $635,052.06 per year (Opp.
2 18-19). In making this determination, defendant uses the "either viewpoint" rule and aggregates
3 the value of the injunction by all class members. As stated above, the "either viewpoint" rule
4 only applies where plaintiffs "unite to enforce a single title or right in which they have a common
5 and undivided interest." *In re Ford,* 264 F.3d at 959. These include matters that "involve a
6 single indivisible res, such as an estate, a piece of property (the classic example), or an insurance
7 policy. These are matters that cannot be adjudicated without implicating the rights of everyone
8 involved with the res." *Id*.

9    Here plaintiff is requesting an injunction against defendant from continued acts that
10 allegedly violated California labor codes. This is not a single indivisible res. An injunction can
11 be granted or denied as to one specific plaintiff separately without implicating another plaintiff's
12 rights. The "either viewpoint" rule, therefore, does not apply. The value of the injunction to this
13 plaintiff alone will be used in determining the amount in controversy.

14    Plaintiff additionally argues that the penalties that she seeks should be excluded in
15 calculating the amount in controversy. She asserts that she has failed to comply with Labor Code
16 Section 2699.3(a), which is necessary for recovery of penalties (Reply 8). Plaintiff supports this
17 argument by stating that the Supreme Court in *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303
18 U.S. 283 (1983), held "[w]here it is legally impossible for Plaintiff to recover damages under a
19 legal theory plead, the court may disregard such claims" (Reply 18). The *Red Cab* decision did
20 not stand for this proposition; instead, it stood for the opposite. *See St. Paul*, 303 U.S. at 289
21 ("[n]or does the fact that the complaint discloses the existence of a valid defense to the claim
22 [defeat jurisdiction]").

23    Plaintiff also misinterprets *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362
24 (9th Cir. 1986). *Pachinger* did not hold — as plaintiff asserts — that a court could eliminate the
25 value of dismissible claims when determining jurisdiction. Instead, it held "that in the few cases
26 involving *a rule or measure* of damages that limits liability, [the court] may go beyond the
27 pleadings for the limited purpose of determining the applicability of the rule or measure of
28 damage." *Id.* at 364 (emphasis added). Because there is no *rule* or *measure of damage* in this

4

dispute, *Pachniger* is inapplicable.  Plaintiff further argues that the penalties based on Labor Code Sections 210, 226, 226.3, 558 and 1174.5 were not referenced in the notice of removal and therefore cannot be asserted now by defendant.  This order, however, treats defendant's opposition as an amendment to the notice of removal.  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002) (treating defendant's opposition as an amendment to the notice of removal).  Plaintiff asserts that amendments are limited to minor technical corrections.

This argument is unpersuasive.  The holding in *Cohn* is derived from *Firemen's Ins. Co. v. Robbins Coal Co.*, 288 F.2d 349 (5th Cir. 1961), which stated:

> A defective allegation of diversity jurisdiction in a suit originally filed in a federal district court can be amended in the Court of Appeals. This is authorized by the provisions of 28 U.S.C.S. § 1653, which states that defective allegations of jurisdiction may be amended, upon terms, in the *trial* or appellate courts.

*See also Cohn,* 281 F.3d at 840 n.1 (citing *Willingham v. Morgan*, 395 U.S. 402, 408 (1969), which cites *Firemen's*).  None of these decisions limit amendments to only minor technical corrections.  All penalties will, therefore, be included in determining the amount in controversy.

### 3. JURISDICTIONAL THRESHOLD FOR DIVERSITY.

Both sides dispute the value of plaintiff's claims.  As stated above, defendant must establish by a preponderance of the evidence that the amount in controversy is over $75,000. With regard to the type of evidence that may be considered, the Ninth Circuit stated:

> [a]lthough we have not addressed the types of evidence defendants may rely upon to satisfy the preponderance of the evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any "summary-judgement-type evidence relevant to the amount in controversy at the time of removal." Conclusory allegations as to the amount in controversy are insufficient.

*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (internal citations omitted).

Defendant calculates unpaid overtime wages based on the assumption that plaintiff worked five hours of overtime per week.  Defendant supports this calculation by pointing to plaintiff's complaint, which stated that "plaintiff and class members regularly work more than 40 hours per week and/or 8 hours per day" (Compl. ¶ 31).  Defendant asserts that a conservative

5

estimate of the amount of overtime worked by plaintiff would be one overtime hour per day for each week adding up to 5 hours of overtime a week. Plaintiff argues that 2.5 hours of overtime per week is a more realistic estimate. Neither party has submitted a declaration or any other evidence attesting to how much overtime plaintiff actually worked.

Plaintiff's more conservative 2.5 hour overtime estimate will be used in estimating the overtime wages owed, but this is likely to be more conservative than what will actually be asserted at trial. Plaintiff's brief does not show how she came up with her estimated overtime wages and therefore defendant's estimate, which has more detailed calculations and is accompanied by a sworn declaration, is more credible. Defendant's five hour overtime estimate divided in half will be used. This amounts to $15,908.30 ($31,816.60 / 2).

Defendant asserts that plaintiff's claims for missed meals and rest breaks are approximately $23,875.02. This calculation assumes that plaintiff missed both breaks three times a week and estimated two penalties per day, one for a missed lunch break and one for a missed rest break. Defendant supports this assumption with a declaration by Jerry Espinoza; an employee that worked with plaintiff on a daily basis for over two years (Espinoza Decl. ¶ 3). Espinoza stated that "Ms. Lyon rarely left the building for formal lunch breaks when she was a Branch Manager" and could "recall only a handful of occasions Ms. Lyon communicating to employees that she was taking formal or announced lunch break, or that she was taking a rest break when she was a Branch Manager" (*id.* at ¶ 4–5).

Defendant's calculations presumes that Labor Code Section 226.7 allowed recovery for each violation instead of one recovery per day. Section 226.7(b) stated, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Lab. Code § 226.7(b). This statute provided for recovery per work day, *not* per violation. Defendant's estimate is therefore off by a magnitude of two and should actually be $11,937.51. Although plaintiff argues that these estimates are speculative, it can be extrapolated from Espinoza's declaration that plaintiff probably took less than one break per week. This order's estimate uses an even more conservative valuation by assuming plaintiff took two breaks a week, which decreases the number

6

of violations defendant faces. Defendant at the very least established this estimate by a preponderance of the evidence.

Penalties, as stated above, need to be calculated as part of the amount in controversy. Defendant calculates the penalty for violating Labor Code Section 203 — 30 days pay at employee's regular rate of pay — based on plaintiff's regular rate of pay at the time of her termination. This amounted to $8,400, which plaintiff does not dispute.

Defendant calculates the remaining penalties with the assumption that there was one violation per pay period. It is more likely than not that defendant's assumption is true based on plaintiff's allegation that defendant regularly violated the labor code and Espinoza's declaration. Defendant estimated the value of these penalties to be $14,400.00. Plaintiff does not dispute defendant's estimate. Defendant has satisfied that the penalties will be $22,800 ($8,400 for Section 203 + $14,400 for the remaining penalties) by a preponderance of the evidence.

The value of plaintiff's request that defendant pay taxes on plaintiff's wages is also included in the evaluation of the amount in controversy. Plaintiff does not dispute whether the calculation is correct, but defendant's estimate of taxes owed are based on its larger calculations of wages owed. Defendant's tax estimates are calculated based on its highest valuations of owed wages, $95,916.60, and approximated the taxes owed as $26,911.98. *See* (Opp. 14–8) ($47,724.90 overtime owed + $39, 791.70 for missed breaks + 8,400 for 30 days pay for violating Labor Code 203 = $95,916.60). Using the undersigned's estimates, the taxes owed should be calculated based on $15,908.30 for overtime, $11,937.51 for missed breaks, and $8,400 for 30 days pay for violating Cal. Lab. Code 203. The estimate for taxes owed should, therefore, be based on $36,245.81 of unpaid wages. The taxes owed, assuming the taxes are directly proportional to the wage owed, would be $10,169.73 (($36,245.81 / $95,916.60) * $26,911.98). The total value of these estimates for the amount in controversy comes out to be $60,815.54 ($15,908.30 + $11,937.51 + $22,800 + $10,169.73). This is not including the value of the injunction or attorney's fees.

Defendant argues that the attorney's fees for a class action such as this will be in the millions with the pro rata share for a single plaintiff to be around $28,846.15. Defendant supports

7

these allegations with awards and settlements of attorney's fees from similar class action law suits (Opp. 21). Plaintiff argues that the attorney's fees are limited to fees up until removal and that plaintiff cannot assert these fees since they were not included in the notice of removal. None of plaintiff's cited decisions held that potential attorney fees are not calculated in the amount in controversy. These arguments are therefore rejected.

Plaintiff also asserts that attorney's fees from similar cases are speculative because of the different facts among all the cases. Plaintiff, however, does not offer any analogies to the contrary. Defendant's use of similar cases to estimate the cost of attorney's fees is sufficient to establish that its estimate is more likely than not correct. Adding plaintiff's estimate for attorney's fees puts the amount in controversy over the jurisdictional threshold. The value of an injunction against defendant would certainly put the amount in controversy well over the jurisdictional threshold.

Defendant estimates the injunction would cost $635,052.06 per year with about 42 class members. Plaintiff's pro rata share of that cost would be over $15,000 per year ($635,052.06 / 42). Defendant's estimates are no doubt on the higher end, but if this order were to use its estimated overtime pay as the value of the injunction it would still be over $15,000.

Adding in the value of the attorney's fees and injunction on the defendant puts the amount in controversy over $100,000; well over the jurisdictional threshold. Note that this order is using a very conservative estimate as to the overtime hours per week that plaintiff worked. Plaintiff's statement that she "regularly work more than 40 hours per week and/or 8 hours per day" would likely be more than the estimated 2.5 hours of overtime per week. Slightly higher estimates on overtime hours would dramatically increase the amount in controversy and could possibly satisfy the amount in controversy alone.

8

**CONCLUSION**

For the reasons stated above, defendant has established that the amount in controversy is above the jurisdictional threshold by a preponderance of the evidence. Subsequently plaintiff's motion for remand and request for fees and costs are **DENIED.**

**IT IS SO ORDERED.**

Dated: April 29, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE